FILED

2009 Jun-30  PM 02:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JOHN RUCKER, et al.,<br>on behalf of themselves and others<br>similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>OASIS LEGAL FINANCE, L.L.C.;<br>et al.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NUMBER:<br>CV 09-U-0432-S |

## PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

In reply to "Defendant's Reply Brief in Support of Motion to Dismiss for Improper Venue and Response to Plaintiffs' Motion for Summary Judgment," the Plaintiffs, on behalf of the putative class, state as follows:

> **The contracts made the basis of this lawsuit, including all ancillary agreements contained therein, are based in whole or in part upon an illegal gambling consideration.  As such, as a matter of clear substantive Alabama law, the entirety of each contract, including the ancillary agreements, is void *ab initio*.  Plaintiffs are entitled to a judgment as a matter of law.**

The Defendant spends much effort trying to create distinctions that do not exist to justify their participating in illegal contracts in the State of Alabama.  No matter what label, caption, or other designation the Defendant uses within its contract, there is no question that the contract *in toto,* the primary financing

1

arrangement and the ancillary agreements it supports, has as its consideration for the bargain an illegal gambling consideration.  As the contract, a copy of which is incorporated herein as Exhibit A, is based in full or in part upon an illegal gambling consideration, whether taken as a whole or looking at each ancillary agreement, the entire contract is void *ab initio*.

The parties to this dispute agree that the underlying contract is governed by Alabama law, albeit for differing reasons.   Defendants rely on an ancillary agreement to the contracts choosing Alabama law to govern the enforcement of the contract.   Regardless of that provision, the contracts were entered into and executed in Alabama[1] and are governed by Alabama substantive law. *Harrison v. Insurance Co. of North America*, 318 So. 2d 253, 257 (Ala. 1975) (Alabama law applies the general rule that the law of the state where the contract was executed determines the rights and liabilities of the parties to the contract.)  Under Alabama law, "The requisite elements of [a contract] include: an offer and acceptance, consideration, and mutual assent to terms essential to the formation of a contract." *Ex parte Grant*, 711 So. 2d 464, 465 (Ala. 1997) (quoting, *Strength v. American Dep't of Fin., Div. of Risk Mgmt.*, 622 So. 2d 1283, 1289 (Ala. 1993)).

The contract is clear and all the evidence the Court needs to determine its legality is contained within the four corners of the document. Under Alabama law,

---

[1] See, Affidavit of John Rucker, attached as Exhibit B.

2

it is well-settled that if a document is unambiguous, its construction and legal effect is a question of law which may be decided by summary judgment. *Wheeler v. First Alabama Bank of Birmingham*, 364 So. 2d 158 (Ala. 1978).   Summary judgment at the outset of this litigation is not only proper but is also determinative of all currently pending and potentially pending issues regarding the interpretation of the ancillary agreements contained in the contract[2], which are all based in full or in part on an illegal gambling consideration in violation of substantive Alabama law.  The Court has all it needs within the document itself, a copy of which is re-incorporated herein as Exhibit A, to make a determination regarding its validity.  As a matter of law, a judgment in favor of the Plaintiffs and class members should be entered.

Section 8-1-150(a) of the Alabama Code provides, "All contracts founded **in whole or in part** on a gambling consideration are void." (Emphasis added.)  The only consideration given for the contracts at issue in this case, whether taken as a whole or looking separately at the main funding agreement and various ancillary agreements, is a gambling consideration.  Under any analysis, the contracts are void.  As there is no legal consideration for the contract, or for any of its included ancillary agreements, it is wholly and completely void *ab initio*.

---

[2] The ancillary agreements include agreements regarding venue selection and choice of law, waiving class action filing, waiving jury trials and the like.  In each case, the consideration for the ancillary agreement is the "non-recourse legal funding" which, under Alabama law, is an illegal gambling consideration. Each separate ancillary agreement is thus void under §8-1-150.

Ala. Code 1975 § 13A-12-20(4) defines gambling as follows, "A person engages in gambling if he stakes or risks something of value upon the outcome of a contest of chance or **a future contingent event not under his control or influence**, upon an agreement or understanding that he or someone else will receive something of value in the event of a certain outcome." (Emphasis added.) The Defendant's contract provides, in pertinent part:

> IF SELLER COMPLIES WITH THIS PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE LEGAL CLAIM CITED BELOW, THEN PURCHASER SHALL RECEIVE NOTHING. (Exhibit A, Purchase Agreement page 1 of 8.)
>
> 3.2  No Attorney-Client Relationship; No Obligations with Respect to Legal Claim.  Purchaser is not engaged in the practice of law and is not serving as Seller's attorney.  **Purchaser's sole obligation under this Purchase Agreement is to pay the Purchase Price hereunder.** (Exhibit A, Purchase Agreement page 3 of 8, emphasis added.)
>
> 3.3  No Direction as to Use of Purchase Price.  Purchaser has imposed no conditions on Seller's use of the Purchase Price. (Exhibit A, Purchase Agreement, page 3 of 8.)
>
> 4.1   Purchaser's Acknowledgment.   Purchaser acknowledges and agrees that **Purchaser shall have no right to and will not make any decisions with respect to the conduct of the Legal Claim or any settlement or resolution thereof and that the right to make such decisions remains solely with Seller and Seller's Attorney.** (Exhibit A, Purchase Agreement, page 3 of 8, emphasis added.)

By the terms of its contract, the Defendant is risking the investment it makes to the Plaintiff or class member on a contingent event that is outside of its control, with the expectation that if that contingent event is successful, then Defendant will

4

be repaid in multiples of its investment.  This point is driven home by the claims made on Defendant's website – www.oasislegal.com.  (See Exhibit C, Affidavit of Pamela S. Ganus, with incorporated Exhibits A through I, attached to this Reply.) Defendant's website makes the parameters of the Defendant's contracts and the contingent and speculative nature of the contracts crystal clear:

### Pre Settlement Funding - What's It Cost?

In the case of a pre-settlement funding, how much you'll owe will depend on two things;

1.  if, and only if, you are successful with your case, and

2.  how long it takes to receive the proceeds from your case.

**First, if, and only if, you are successful with your case will you be required to repay Oasis. If you lose your case, you would owe us nothing!**

Second, assuming you are successful, then your attorney will repay Oasis out of the proceeds of your case award. The amount that your attorney is required to repay us is calculated using a simple, straightforward "multiplier" (not a complex interest rate calculation). For example, if you took funding of $1,000, and if the multiplier was 1.5 at the time you received your settlement payment, then you would owe Oasis $1,500. The amount of the multiplier increases with the length of time it takes your case to settle. Simply put, you'll owe less if your case settles within the first six months than if it takes three years to settle.

Prior to actually committing to funding you'll be given a simple and clear fee schedule based on your individual case, with the appropriate multipliers so you'll know exactly how much you'll owe should your case settle within a specified time frame. Everything is up-front and in plain, easy to understand, language.

> **IMPORTANT!!! Remember, with a pre-settlement funding from Oasis there are NO hidden fees. While you wait for your case to settle, you pay nothing and there is NO RISK. If you should lose your case, you would owe us nothing.**
>
> With other types of financing if you lose your case you still have to pay it back. With pre-settlement funding from Oasis, we are repaid out of the proceeds of your case award. **Again, there is no risk! If you lose your case you owe us nothing!**

(Exhibit I to Affidavit of Pamela S. Ganus, emphasis in original.)

The final word from the appellate courts in the State of Alabama regarding whether contracts such as this are gambling came in *Wilson v. Harris*, 688 So. 2d 265 (Ala. Civ. App. 1996). This is not an issue of champerty, and the Alabama Court of Civil Appeals clearly pointed out that cases on champerty were merely instructive, finding the conduct to be closely akin to champerty. *Wilson*, 688 So. 2d 270. This is a case about risking money upon the outcome of a lawsuit – a contingent outcome outside the control of the Defendant. As the *Wilson* Court held:

> The general tendency of the [legal financing] agreement is opposed to the public interest because it condones speculation in litigation, makes sport of the judicial process, and tempts the unscrupulous to prey upon the distress of the ignorant and unfortunate. We hold that the agreement violates public policy and is therefore void because it is supported by gambling consideration and its speculative characteristics make it closely akin to champerty.

*Wilson*, 688 So. 2d 270. This is the law regarding this type of agreement in Alabama. The fact that various sister states may allow such conduct within their

borders is of no consequence[3]. These agreements are illegal and void *ab initio* in Alabama.

The similarities between the Defendant's conduct here and the conduct set out in *Wilson*, despite Defendant's efforts to create distinctions, are glaring. One of the best synopses of the *Wilson* case was written by Professor Susan Lorde Martin in the Fall, 1999/Winter, 2000 edition of the *University of Michigan Journal of Law Reform*, in her article entitled, "Financing Plaintiffs' Lawsuits: an Increasingly Popular (and Legal) Business." At page 65 of the Journal, Professor Martin states:

> In *Wilson v. Harris*, Wilson agreed to give Harris, a friend of many years who was in financial difficulty, $400 per month in exchange for Harris' assigning to him part of any recovery she might realize from a wrongful death case she had pending on appeal. When her appeal was concluded, she refused to give Wilson the agreed-upon share of the proceeds. Wilson alleged breach of contract. **He described entering into similar agreements with other people who were short of cash but had lawsuits pending. In each instance the borrower would have no means to repay Wilson but for a successful outcome of the pending suit.**
>
> The court determined that Harris' agreement with Wilson was not exactly champertous because Harris already had a judgment on appeal when she entered into the agreement with Wilson. Nevertheless, the court refused to enforce the agreement because, even though it did not satisfy all the requirements for champerty, it was "closely akin to champerty" and "violated the public policy against gambling and speculating in litigation." The opinion suggests the court's belief that

---

[3] As Defendant notes in its brief, not all states allow this type of financing. On its website, the Defendant has a TV commercial that makes clear that this financing is not available to residents of North Carolina. See Exhibit C, Affidavit of Pamela S. Ganus, attached. Further, a list of states in which the Defendant does business is included on Exhibit I to Ms. Ganus' Affidavit.

the primary purpose of the champerty doctrine is to eliminate "gambling in litigation." Thus, it seems quite clear that in Alabama investing in litigation would be considered a particularly undesirable form of gambling which the law would not sanction.

33 U. Mich. J.L. Reform 57, 65-66 (internal citations omitted, emphasis added). Professor Martin goes on to compare the law of Alabama to the law of Ohio at the time. As the Defendant quite correctly notes in its brief, in the ten years since Professor Martin's article, Ohio has changed its law. Alabama has not.

One fact Professor Martin did not cite from *Wilson* is that the agreements Mr. Wilson entered into were contracts prepared by his lawyer – similar to the contracts presented to the Plaintiffs here. Each person he loaned money to had a pending lawsuit and was more than likely represented by counsel. Clearly, Ms. Harris was represented by counsel. Like the present case, Mr. Wilson was owed no repayment if the underlying lawsuit was not successful. The only measurable difference between *Wilson* and the case at bar is that the Defendant here is a limited liability corporation that does business in many states. However, the legality of the transactions in other states does not negate the fact that under Alabama law, these transactions are a particularly undesirable form of gambling which the law does not sanction. The conduct is the same, no matter how the Defendant chooses to name its transaction[4] or that Mr. Wilson asked for a

---

[4] *If it looks like a duck and walks like a duck. . .* Defendant here chooses to call its non-recourse financing a "Purchase Agreement." *Black's Law Dictionary, Abridged Sixth Edition,* defines "purchase" as "Transmission of property from one person to another by voluntary act and agreement, founded on a

percentage of the recovery as opposed to a fixed repayment schedule[5].  In both *Wilson* and the case at bar, there is no contemplated repayment if the borrower's lawsuit is unsuccessful.  In both *Wilson* and the case at bar, the "lender" is making a wager that the plaintiff's lawsuit will resolve favorably so that their "investment" will be repaid with significant interest.  In both *Wilson* and the case at bar, the consideration for the bargain is illegal and the agreements, including any ancillary agreements, are void *ab initio*.

As the only consideration for the Defendant's "Purchase Agreement," including all of its ancillary agreements, is an illegal gambling consideration, summary judgment is proper and should be entered in favor of the Plaintiffs and putative class.

---

valuable consideration. To own by paying or by promising to pay an agreed price which is enforceable at law." It defines "loan" as "A lending.  Delivery by one party to another party a sum of money upon agreement, express or implied, to repay it with or without interest." As Defendant's contract makes clear, if the Plaintiff or class member's lawsuit is successful, they expect to be repaid with interest.  If it looks like a duck and walks like a duck and quacks like a duck…

[5] In the contract attached as Exhibit A, the repayment is shown as follows:

Purchase Price: $5,000.00

Oasis Ownership Amount

| Payment Schedule | Oasis Ownership Amount (Payoff Amount) |
|---|---|
| January 23, 2008 to July 22, 2008 | $7,500.00 |
| July 23, 2008 to January 22, 2009 | $8,250.00 |
| January 23, 2009 to April 22, 2009 | $11,250.00 |
| April 23, 2009 to July 22, 2009 | $12,500.00 |
| July 23, 2009 to January 22, 2010 | $13,750.00 |
| January 23, 2010 to July 22, 2010 | $16,250.00 |
| July 23, 2010 and thereafter | $17,500.00 |

Unlike *Wilson*, under this structure, many class members end up owing the full settlement value of their underlying personal injury cases to the Defendant for the small up front financing they receive.

## CONCLUSION

Despite their creative drafting, it is abundantly clear that the Defendant's "Purchase Agreement" is no different than the agreements Mr. Wilson was offering to lend money on pending lawsuits.  The fact that the Defendant is an out-of-state limited liability corporation that does business in many states does not change the character of the transaction.  Nor does the fact that many states allow this type of transaction make it legal in Alabama.  Alabama law is clear:

> The general tendency of the [legal financing] agreement is opposed to the public interest because it condones speculation in litigation, makes sport of the judicial process, and tempts the unscrupulous to prey upon the distress of the ignorant and unfortunate.  We hold that the agreement violates public policy and is therefore void because it is supported by gambling consideration and its speculative characteristics make it closely akin to champerty.

*Wilson v. Harris*, 688 So. 2d 265, 270 (Ala. Civ. App. 1996).  Every part of the contract entered into by the Defendant with the Plaintiffs and class members, whether the agreement for funding or any of the ancillary agreements, is founded upon an illegal gambling consideration and is void *ab initio* as a matter of Alabama law.  Summary judgment in favor of the Plaintiffs and putative class should be entered.

Respectfully submitted this 30th day of June, 2009.


*/s/ Brian D. Turner, Jr.*
Brian D. Turner, Jr.

10

_/s/ Samuel M. Hill_
Samuel M. Hill
Attorneys for Plaintiffs

OF COUNSEL:
Hill|Turner, LLC
2117 Magnolia Avenue, Suite 100
Birmingham, AL 35205
Telephone:  (205) 250-7776
Facsimile:  (205) 250-7675
e-mail:  brian@hillturner.com
        sam@hillturner.com

AND

_/s/ James H. McFerrin_
James H. McFerrin
Attorney for Plaintiffs

OF COUNSEL:
The McFerrin Law Firm
2117 Magnolia Avenue, Suite 100
Birmingham, AL 35205
Telephone:  (205) 870-5704
Facsimile:  (205) 250-7675
e-mail:  jhmcferrin@bellsouth.net

## **CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing on counsel for Defendants through the CM/EFS which will provide a copy of the same to the following, on this the 30th day of June, 2009:

Sara Anne Ford
Lana Alcorn Olson
Lightfoot, Franklin & White
400 20th Street North
Birmingham, AL 35203

William E. McErlean
Charla L. Hausler
Brad E. Rago
Barnes & Thornburg LLP
1 North Wacker Drive, Suite 4400
Chicago, IL  60603

/s/ Brian D. Turner, Jr.
OF COUNSEL

12